UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| AHMET MUSIC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Case No. 4:16-CV-1667-SPM |
| | ) |
| | ) |
| NANCY A. BERRYHILL,[1] | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## **MEMORANDUM OPINION**

This is an action under 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial review of the final decision of Defendant Nancy A. Berryhill, the Acting Commissioner of Social Security, denying the application of Plaintiff Ahmet Music ("Plaintiff") for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*, and for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381, *et seq.* (the "Act"). The parties consented to the jurisdiction of the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c). (Doc. 16). Because I find the decision denying benefits was supported by substantial evidence, I will affirm the Commissioner's denial of Plaintiff's application.

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Acting Commissioner Carolyn W. Colvin as the defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

1

## I. PROCEDURAL BACKGROUND

On March 11, 2013, Plaintiff applied for SSI and DIB, alleging that he had been unable to work since October 12, 2010. (Tr. 73, 185-98). His applications were initially denied. (Tr. 100-04). Plaintiff filed a Request for Hearing by Administrative Law Judge (ALJ). (Tr. 107-08). On September 23, 2015, after two hearings, the ALJ issued a decision finding Plaintiff not disabled. (Tr. 6-25). On August 24, 2016, the Appeals Council denied Plaintiff's request for review. (Tr. 1-4). Plaintiff has exhausted all administrative remedies, and the decision of the ALJ stands as the final decision of the Commissioner of the Social Security Administration.

## II. FACTUAL BACKGROUND

Plaintiff testified at two hearings before the ALJ. (Tr. 26-52, 53-70). At the first, held on March 31, 2015, Plaintiff testified that he has problems including back pain and left knee pain that limit his ability to sit, stand, and walk (Tr. 36-39); sleep problems (Tr. 39, 42-43); swelling in his fingers (Tr. 40); numbness in his elbows (Tr. 40); and pain in his left shoulder and neck that causes him difficulty in lifting his arm overhead and forward. (Tr. 41-42). Plaintiff worked most recently as a machine operator for nine years, which involved moving up to 150 pounds. (Tr. 44-45). He stopped working because of his knee injury. (Tr. 45). At the second hearing, held on September 15, 2015, Plaintiff testified that since the prior hearing, he had begun taking medicine for depression and cholesterol issues and had been trying to do back exercises at home. (Tr. 59, 61).

On April 29, 2013, Plaintiff completed a Function Report. (Tr. 253-60). He indicated that his conditions affected his ability to lift, squat, bend, stand, walk, sit, kneel, climb stairs, remember, concentrate, understand, follow instructions, and complete tasks; he did not indicate problems with reaching. (Tr. 258). He stated that he can only lift eight pounds because his shoulder hurts. (Tr. 258).

On July 8, 2013, Charles Mannis, M.D., conducted a consultative examination of Plaintiff. (Tr. 391-401). Plaintiff's chief complaints were left knee pain, back pain, and shoulder pain. (Tr. 391). Plaintiff reported fairly constant knee pain and intermittent knee swelling that interfered with his ability to squat and go up and down stairs. (Tr. 391). It was noted that there was "no definitive history of injury to his neck, shoulders or back, although he complains of diffuse pain in the upper back and the lower back and pain in his shoulders when he lifts." (Tr. 391-92). Plaintiff attributed this in some part to heavy work over a period of time. (Tr. 392). On examination, Plaintiff had a slightly stiff-legged gait on the left with lack of normal heel/toe push-off; exhibited diffuse tenderness throughout the thoracic area and lower lumbar area; had full motion of his neck and shoulders (but complained of pain with internal rotation of both shoulders); had diffuse edema of all fingers and was unable to make a complete fist; showed diffuse tenderness in the lumbar spine; and had global tenderness in the left knee. (Tr. 392). His grip strength was 4/5 bilaterally. (Tr. 392). Dr. Mannis's diagnoses were degenerative arthritis of the left knee, probable degenerative arthritis of the lumbar spine, and bilateral shoulder pain. (Tr. 393). Dr. Mannis completed a Medical Source Statement in which he opined that Plaintiff could lift and carry up to 20 pounds occasionally and 10 pounds frequently; could sit for 30 minutes at a time without interruption and for five hours in an eight-hour workday; could stand for 30 minutes at a time and for two hours in an eight-hour workday; could walk for 20 minutes at a time and one hour in an eight-hour workday; could frequently reach (other than overhead); and could occasionally reach overhead, handle, finger, feel, and push/pull. (Tr. 394-96).

A review of Plaintiff's medical treatment records dated during and shortly before his alleged disability onset date shows Plaintiff has sought treatment for knee pain, lower back pain, shoulder pain, neck pain, headaches, sleep problems, hyperlipidemia, esophageal reflux, and

mental symptoms. The Court will address additional specific records relevant to the issues presented by the parties' briefs, as needed, in the discussion section below.

### III. STANDARD FOR DETERMINING DISABILITY UNDER THE ACT

To be eligible for benefits under the Social Security Act, a claimant must prove he or she is disabled. *Pearsall v. Massanari,* 274 F.3d 1211, 1217 (8th Cir. 2001); *Baker v. Sec'y of Health & Human Servs.*, 955 F.2d 552, 555 (8th Cir. 1992). The Social Security Act defines as disabled a person who is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A); *see also Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010). The impairment must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

To determine whether a claimant is disabled, the Commissioner engages in a five-step evaluation process. 20 C.F.R. §§ 404.1520(a), 416.920(a); *see also McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011) (discussing the five-step process). At Step One, the Commissioner determines whether the claimant is currently engaging in "substantial gainful activity"; if so, then he is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i); *McCoy*, 648 F.3d at 611. At Step Two, the Commissioner determines whether the claimant has a severe impairment, which is "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities"; if the claimant does not have a severe

impairment, he is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1520(c), 416.920(a)(4)(ii), 416.920(c); *McCoy*, 648 F.3d at 611. At Step Three, the Commissioner evaluates whether the claimant's impairment meets or equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "listings"). 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); *McCoy*, 648 F.3d at 611. If the claimant has such an impairment, the Commissioner will find the claimant disabled; if not, the Commissioner proceeds with the rest of the five-step process. 20 C.F.R. §§ 404.1520(d), 416.920(d); *McCoy*, 648 F.3d at 611.

Prior to Step Four, the Commissioner must assess the claimant's "residual functional capacity" ("RFC"), which is "the most a claimant can do despite [his or her] limitations." *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009) (citing 20 C.F.R. § 404.1545(a)(1)); *see also* 20 C.F.R. §§ 404.1520(e), 416.920(e). At Step Four, the Commissioner determines whether the claimant can return to his past relevant work, by comparing the claimant's RFC with the physical and mental demands of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f); *McCoy*, 648 F.3d at 611. If the claimant can perform his past relevant work, he is not disabled; if the claimant cannot, the analysis proceeds to the next step. *Id.* At Step Five, the Commissioner considers the claimant's RFC, age, education, and work experience to determine whether the claimant can make an adjustment to other work in the national economy; if the claimant cannot make an adjustment to other work, the claimant will be found disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *McCoy*, 648 F.3d at 611.

Through Step Four, the burden remains with the claimant to prove that he is disabled. *Moore*, 572 F.3d at 523. At Step Five, the burden shifts to the Commissioner to establish that, given the claimant's RFC, age, education, and work experience, there are a significant number of

other jobs in the national economy that the claimant can perform. *Id.*; *Brock v. Astrue*, 674 F.3d 1062, 1064 (8th Cir. 2012).

## IV. THE ALJ'S DECISION

Applying the foregoing five-step analysis, the ALJ here found that Plaintiff met the insured status requirements of the Act through December 31, 3015, and had not engaged in substantial gainful activity during the period from his alleged onset date of October 12, 2010, through the date of the decision. (Tr. 11). The ALJ found that Plaintiff had the severe impairments of post-traumatic stress disorder, degenerative disc disease, and degenerative joint disease (osteoarthritis of left knee); and that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. (Tr. 11-12). The ALJ found that Plaintiff had the RFC to perform and sustain light work as defined in 20 C.F.R. §§ 404.1567(b) and § 416.967(b), with several additional restrictions. (Tr. 13). Plaintiff could lift and/or carry up to 20 pounds occasionally and 10 pounds frequently; could stand and/or walk six hours total in an eight-hour workday; could sit six hours total in an eight-hour workday; could not climb ladders, ropes, or scaffolds; could not kneel, crouch, or crawl; could perform simple instructions (with any communications translated into Bosnian); could have only occasional contact with the general public, coworkers, and supervisors; and could adapt to routine work changes. (Tr. 13). Relying on the testimony of a vocational expert, the ALJ found that Plaintiff was unable to perform any past relevant work but that there were other jobs that existed in significant numbers in the national economy that Plaintiff could perform, including representative occupations such as garment sorter, marker, and small products assembler. (Tr. 19-21). The ALJ concluded that Plaintiff was not under a disability, as defined by the Act, between October 12, 2010, through the date of the decision. (Tr. 21).

## V. DISCUSSION

Plaintiff raises two arguments in support of his claim: (1) that the ALJ committed reversible error by failing to find his degenerative joint disease of the left shoulder to be a "severe" impairment; and (2) that the ALJ committed reversible error by posing to the vocational expert a hypothetical question that was inadequate because it did not include limitations with respect to Plaintiff's left shoulder.

### A. Standard for Judicial Review

The decision of the Commissioner must be affirmed if it complies with the relevant legal requirements and is supported by substantial evidence in the record as a whole. *See* 42 U.S.C. §§ 405(g); 1383(c)(3); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002). "Substantial evidence 'is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion.'" *Renstrom v. Astrue*, 680 F.3d 1057, 1063 (8th Cir. 2012) (quoting *Moore*, 572 F.3d at 522). In determining whether substantial evidence supports the Commissioner's decision, the court considers both evidence that supports that decision and evidence that detracts from that decision. *Id.* However, the court "'do[es] not reweigh the evidence presented to the ALJ, and [it] defer[s] to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence.'" *Id.* at 1064 (quoting *Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir. 2006)). "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." *Partee v. Astrue*, 638 F.3d 860, 863 (8th Cir. 2011) (quoting *Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005)).

### B. The ALJ Did Not Err by Failing to Find Plaintiff's Left Shoulder Impairment Was a Severe Impairment

Plaintiff's first argument is that the ALJ committed reversible error by failing to find that degenerative joint disease of the left shoulder was one of Plaintiff's severe impairments. Plaintiff argues that the medical evidence and Plaintiff's testimony support a finding that his left shoulder impairment caused pain that significantly limits his ability to do work-related activities.

"It is the claimant's burden to establish that his impairment or combination of impairments are severe." *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). To be considered severe, an impairment must "significantly limit[] [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). *See also* Social Security Ruling (SSR) 96-3p, 1996 WL 374181, at *1 (July 2, 1996). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby*, 500 F.3d at 707. The Eighth Circuit has noted that "[s]everity is not an onerous requirement for the claimant to meet, but it is also not a toothless standard, and [the Eighth Circuit] ha[s] upheld on numerous occasions the Commissioner's finding that a claimant failed to make this showing." *Id.* at 708.

After review of the record, the Court finds substantial evidence to support the ALJ's determination that Plaintiff's shoulder pain was not a severe impairment. A review of the record shows that Plaintiff's complaints of shoulder pain were intermittent and that the objective findings related to his shoulder impairment were typically normal or mild. At a visit to his doctor on October 26, 2010, two weeks after the alleged disability onset date, Plaintiff did not mention any shoulder issues, and his doctor noted that he could "work at a level of full duty." (Tr. 319-20). Plaintiff also did not mention any shoulder issues at a visit to his nurse practitioner in December 2010. (Tr. 18, 359). Six months later, on June 30, 2011, Plaintiff saw his nurse practitioner and complained of

several symptoms, including pain in his left shoulder with movement. (Tr. 354). Pain was elicited on motion of the shoulder, crepitus was found, and Celebrex was prescribed. (Tr. 354-56). However, at follow-up visits in August 2011 and September 2011, Plaintiff did not mention any shoulder pain. (Tr. 347, 350). Plaintiff again complained of left shoulder pain with movement in February 2012, and was prescribed Celebrex and referred to orthopedics for his shoulder impairment. (Tr. 343, 345-46). However, at his next visit in August 2012, Plaintiff returned and did not complain of shoulder pain, just lower back pain and knee pain; it was noted that "he wants to apply for disability because of knee pain and back pain." (Tr. 338-39). His nurse practitioner noted that he had not gone to his orthopedics appointment. (Tr. 338). In November 2012, he mentioned shoulder pain (along with other symptoms), but on examination no abnormalities were noted in his shoulders, and it was again noted that he had not gone to his orthopedics appointment. (Tr. 332, 334). At visits in January 2013, Plaintiff did not mention shoulder issues, and on examination his joints had normal ranges of motion without deformity. (Tr. 328-31, 384). At a visit in March 2013, it was noted that Plaintiff had chronic low back and shoulder pain, but on examination his shoulders showed no abnormalities, no pain was elicited from motion of the shoulder, and his strength was normal. (Tr. 324-25). At a July 2013 consultative examination, Plaintiff reported left knee pain, back pain, and shoulder pain, and examination showed pain with internal rotation of both shoulders, but he had a full range of motion in the shoulders. (Tr. 392). Plaintiff returned to his nurse practitioner for follow-up in October 2013 and complained of back pain, but not shoulder pain. (Tr. 433-36). In February and July 2014, Plaintiff complained of right and left upper back pain or shoulder pain and had tenderness on palpation of the trapezius muscles. (Tr. 421-22, 428-29). In November 2014, Plaintiff reported back pain from the neck down but did not mention shoulder pain. (Tr. 416-17). In January 2015, Plaintiff reported elbow, back, and knee

9

pain, but did not mention shoulder problems. (Tr. 412-15). In April 2015, left shoulder X-rays showed no fracture or dislocation, no soft tissue abnormality, and only mild degenerative changes. (Tr. 448).

In light of Plaintiff's inconsistent complaints of shoulder pain—often with gaps of several months in which he did not even mention shoulder pain to his treatment providers—and the largely mild to normal objective findings in the record, the Court finds substantial evidence in the record to support the ALJ's finding that Plaintiff's shoulder impairment did not significantly limit his ability to do basic work activities and thus was not a severe impairment. Moreover, even assuming *arguendo* that the ALJ erred in not finding Plaintiff's shoulder impairment to be severe, any such error was harmless in light of the fact that the ALJ's considered the evidence related to Plaintiff's shoulder impairment in assessing Plaintiff's RFC. Where, as here, the ALJ finds in a claimant's favor at Step Two by finding *any* severe impairment, the ALJ must proceed with the next step in the disability evaluation process. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). In determining the claimant's RFC later in the five-step process, the ALJ must consider the limitations caused by *all* of the claimant's impairments, both severe and non-severe. 20 C.F.R. §§ 404.1545(a)(2) ("We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not "severe," as explained in §§ 404.1520(c), 404.1521, and 404.1523, when we assess your residual functional capacity."); 416.945(a)(2). That is what the ALJ did here. The ALJ discussed the medical evidence related to Plaintiff's shoulder impairments at several points in the RFC analysis, specifically noting Plaintiff's complaints of shoulder pain to Dr. Mannis and others, findings in the record regarding Plaintiff's range of motion in the shoulders, and X-ray imaging of Plaintiff's shoulders. (Tr. 16-18). The ALJ specifically noted that the limitation to light work with postural limitations took into consideration "all of the

claimant's medical[ly] determinable impairments *including the non-severe impairments*." (Tr. 18) (emphasis added). Even assuming that the ALJ erred by not finding Plaintiff's shoulder impairment to be a severe impairment, such error was harmless in light of the fact that she found other severe impairments and considered Plaintiff's shoulder problems in the RFC analysis. *See, e.g.*, *Givans v. Astrue*, No. 4:10-CV-417-CDP, 2012 WL 1060123, at *17 (E.D. Mo. March 29, 2012) (holding that even if the ALJ erred in failing to find one of the plaintiff's impairments to be severe, the error was harmless because the ALJ found other severe impairments and considered both those impairments and the plaintiff's non-severe impairments when determining Plaintiff's RFC).

For all of the above reasons, Plaintiff's first argument is without merit.

### C. The Question the ALJ Posed to the Vocational Expert Was Adequate

Plaintiff's second argument is that the ALJ improperly relied on an answer to a hypothetical question to the vocational expert that did not include limitations related to Plaintiff's left shoulder impairment. As discussed above, at Step Five, the Commissioner bears the burden of establishing that the claimant maintains the RFC to perform a significant number of jobs within the national economy. *Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2001). The ALJ may rely on the testimony of a vocational expert to meet that burden. *Id.* "Testimony from a vocational expert is substantial evidence only when the testimony is based on a correctly phrased hypothetical question that captures the concrete consequences of a claimant's deficiencies." *Collins v. Astrue*, 648 F.3d 869, 872 (8th Cir. 2011) (quoting *Cox v. Astrue*, 495 F.3d 614, 620 (8th Cir. 2007))

At the hearing, the ALJ described to the vocational expert an individual of Plaintiff's age, education, work history, and RFC, and the vocational expert responded with three jobs such an

individual could perform. (Tr. 65-67). The ALJ relied on the response to that question in finding Plaintiff not disabled at Step Five.

To support his argument that the hypothetical question was inadequate, Plaintiff relies primarily on *Newton v. Chater*, 92 F.3d 688 (8th Cir. 1996), in which the Eighth Circuit found that a hypothetical question posed to a vocational expert was inadequate because it did not include any mention of the plaintiff's deficiencies of concentration, persistence, or pace. *Id.* at 694-95. Plaintiff argues that here, similarly, the ALJ improperly relied on a hypothetical question that did not include any limitations related to Plaintiff's left shoulder. *Newton* is inapposite. In *Newton*, the Court noted that there was "no dispute" that the plaintiff suffered from deficiencies of concentration, persistence, and pace that were not mentioned in the hypothetical question, and that ALJ even stated in his decision that the plaintiff "often" had deficiencies of concentration, persistence, or pace. *Id.* at 695. Here, in contrast, it is not undisputed that Plaintiff had limitations related to the left shoulder that were not accounted for by the lifting, carrying, and climbing limitations in the RFC and the hypothetical question. Notably, the ALJ did *not* state in his decision that Plaintiff had particular limitations related to his left shoulder beyond those mentioned in the RFC and hypothetical question. Instead, the ALJ simply did not find credible Plaintiff's allegations of shoulder limitations more severe than those reflected in the lifting, carrying, and climbing limitations in the RFC and hypothetical question.

Although Plaintiff does not specifically challenge the ALJ's RFC finding, it appears that he may be arguing that the ALJ's decision not to include additional left shoulder limitations in the RFC (and corresponding hypothetical question) was not supported by substantial evidence. After review of the record, the Court finds that substantial evidence supports the ALJ's determination that any limitations related to Plaintiff's left shoulder impairment were adequately accounted for

by the limitation that Plaintiff could only lift and/or carry up to 20 pounds occasionally and 10 pounds frequently and could not climb ladders, ropes, or scaffolds. As discussed above, the ALJ expressly discussed the medical and other evidence related to Plaintiff's shoulder impairment. (Tr. 16-18). The lifting limitations in the RFC and hypothetical question mirror the findings of consultative examiner, Dr. Mannis. (Tr. 394). In addition, the objective findings related to Plaintiff's shoulder impairment were often normal or mild, showing that Plaintiff had a normal range of motion (384, 392); only mild degenerative changes on X-ray (Tr. 448); normal strength (Tr. 325); and no shoulder abnormalities on examination. (Tr. 325). These objective findings support the ALJ's determination that Plaintiff's allegations of shoulder pain were not as limiting as alleged. *See Goff v. Barnhart*, 421 F.3d 785, 792 (8th Cir. 2005) (holding that it was proper for the ALJ to consider unremarkable or mild objective medical findings as one factor in assessing credibility of subjective complaints). Moreover, Plaintiff's complaints of shoulder pain were infrequent, with many visits where Plaintiff complained of no shoulder pain at all. Plaintiff's infrequent complaints related to his shoulder pain undermine his claim that his pain was disabling. *See Kelley v. Barnhart,* 372 F.3d 958, 961 (8th Cir. 2004) ("Infrequent treatment is also a basis for discounting a claimant's subjective complaints."). Additionally, as the ALJ noted, Plaintiff was referred to orthopedics for his shoulder issues, but his nurse practitioner repeatedly noted that he did not go to his orthopedics appointment; this also undermines Plaintiff's claims of disabling shoulder pain. (Tr. 15, 334, 338, 346). *See Julin v. Colvin*, 826 F.3d 1082, 1087 (8th Cir. 2016) (finding that a failure to follow recommended course of treatment weighed against the credibility of the plaintiff's subjective complaints).

The Court acknowledges that the ALJ did not include in the RFC the limitations in reaching, handling, feeling, pushing, and pulling found in the opinion of consultative examiner Dr.

Mannis. However, the ALJ expressly discussed Dr. Mannis's opinion in detail and gave it only partial weight, finding that Dr. Mannis's report "failed to reveal the type of significant clinical and laboratory abnormalities one would expect if the claimant were in fact disabled." (Tr. 16, 19). That conclusion was reasonable and supported by the evidence, including Dr. Mannis's findings that Plaintiff had a full range of motion in his neck and shoulders (albeit with a complaint of pain with internal rotation of both shoulders); had no clubbing or cyanosis in his upper extremities; had full extension of his fingers; had normal sensation; and had grip strength that was 4 out of 5. (Tr. 16, 392). It was permissible for the ALJ to discount this opinion as unsupported by Dr. Mannis's own findings. *Cf. Davidson v. Astrue*, 578 F.3d 838, 843 (8th Cir. 2009) ("It is permissible for an ALJ to discount an opinion of a treating physician that is inconsistent with the physician's clinical treatment notes.").

For the above reasons, the Court finds substantial evidence to support the ALJ's RFC determination, as reflected in the hypothetical question posed to the vocational expert, and it will not reverse that decision. *See Howe v. Astrue*, 499 F.3d 835, 839 (8th Cir. 2007) ("If substantial evidence supports the ALJ's decision, we will not reverse it merely because substantial evidence would have supported a contrary outcome or because we might have decided the case differently in the first instance."). Because the hypothetical to the VE adequately captured the consequences of Plaintiff's impairments that were supported by the record, the response to that hypothetical question constitutes substantial evidence to support the ALJ's finding at Step Five. *See Robson v. Astrue*, 526 F.3d 389, 393 (8th Cir. 2008) (finding substantial evidence supported the ALJ's conclusion at step five where the ALJ's hypothetical posed to the VE contained all of the concrete consequences of the plaintiff's physical deficiencies).

## VI. CONCLUSION

For all of the foregoing reasons, the Court finds the ALJ's decision is supported by substantial evidence. Accordingly,

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the decision of the Commissioner of Social Security is **AFFIRMED**.

 

_____
SHIRLEY PADMORE MENSAH
UNITED STATES MAGISTRATE JUDGE

Dated this 13th day of March, 2018.